**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **DUTCH JACKSON IATG, LLC** )<br>**AND** )<br>**MICHAEL "DUTCH" JACKSON** )<br> )<br>      PLAINTIFFS, )<br> )<br>vs. )<br> )<br>**THE BASKETBALL MARKETING** )<br>**COMPANY, doing business as "AND1"** )<br>      Serve:  Registered Agent )<br>      4 Industrial Park )<br>      Paoli, PA  19301 )<br> )<br>**ESPN Inc.** )<br>      Serve:  ESPN Enterprises, Inc. )<br>      ESPN Plaza )<br>      Attn: Legal Department )<br>      Bristol, CT 06010-7454 )<br> )<br>**ESPN ENTERPRISES, INC.,** )<br>      Serve:  ESPN Enterprises, Inc. )<br>      ESPN Plaza )<br>      Attn: Legal Department )<br>      Bristol, CT 06010-7454 )<br> )<br>**ESPN HOME MEDIA** )<br>      Serve:  ESPN Enterprises, Inc. )<br>      ESPN Plaza )<br>      Attn: Legal Department )<br>      Bristol, CT 06010-7454 )<br> )<br>**AMAZON.COM** )<br>      Serve: Corporation Service Company)<br>      Registered Agent )<br>      300 Deschutes Way SW )<br>      Ste. 304 )<br>      Tumwater, WA 98501-7719 )<br> )<br>      **AND** )<br> )<br>**HASTINGS ENTERTAINMENT, INC.** )<br>      a/k/a/ goHastings.com | Cause No.<br><br>**Jury Trial Demanded** |

Serve: C.T. Corporation Systems      )
      Registered Agent      )
      350 N. St. Paul St.      )
      Suite 2900      )
      Dallas, TX  75201      )
                              )
            DEFENDANTS      )

## C O M P L A I N T

Plaintiffs  Dutch Jackson IATG LLC ("DJI") and Michael "Dutch" Jackson hereby assert

their Complaint against the above-named Defendants for violations of the Federal Copyright Act,

Federal Lanham Act and various state laws and state as follows:

### Summary of Action

1.        This action involves the Defendants' outright misappropriation and unauthorized

use of  Dutch Jackson's recorded performance of the hip hop/rap song  "I am the Greatest,"  which

Jackson had written and recorded but had not yet published or released, and the use of that recording

by the above-named Defendants to market, promote and sell their basketball shoes, sports apparel,

digital video discs, television programs, websites, and other products for their own commercial

advantage and profit, and to increase their name recognition and brand value  ---   all without the

knowledge, permission, or authorization of Dutch Jackson or  DJI, without any compensation to

Dutch Jackson or DJI, and while hiding the fact that the song was the original work of Dutch

Jackson.

2.        Upon Information and belief, Defendants and those acting by, through and under

them have used the Plaintiffs ' work to market and sell literally millions of dollars of products,

without compensation to Plaintiff.

3.        The actions and inactions of Defendants described herein violated federal

copyright law, the Federal Lanham act and several state laws, and Plaintiffs bring this action to

compel Defendants to disgorge the monies wrongfully received from the sales of products which

resulted from the use of Plaintiffs' song, to award Plaintiffs their damages suffered as a result of Defendants' actions and inactions, for statutory damages if so elected at the appropriate time, and for costs and attorneys fees.

## Parties, Jurisdiction, and Venue

4.       Plaintiff Michael "Dutch" Jackson is an individual, who writes, records, publishes and distributes original musical compositions under the name "Dutch Jackson".

5.       Plaintiffs DJI is a Missouri limited liability company formed by Jackson and others for the purposes of marketing, licensing, selling and otherwise commercializing the song "I am the Greatest" (the "Song").

6.       By virtue of an assignment from Plaintiff Jackson which transferred both the copyright to the Song and any and all existing causes of action to DJI, DJI is the owner, copyright holder, and proprietor of the Song and owns and controls all rights to or arising from the Song, including the copyright to and in the song, the performance of the song which is the subject of this action, and the claims asserted herein.

7.       Plaintiff Michael Dutch Jackson acknowledges the above-referenced assignment, believes all rights to the Song and to the causes of action pursued hereunder are the property of and belong to DJI, and joins this action as co-Plaintiffs simply to assert and protect any claims that for any reason are found to be outside the scope of the assignment and/or to assert all claims set forth herein if the assignment is for any reason found to be null and void.

8.       Upon information and belief, The Basketball Marketing Company, doing business as And1 (hereafter referred to as "And1") is a Delaware corporation which transacts and conducts business across the nation and the world, including within the state of Missouri and this Eastern District of Missouri.

9.      Upon Information, ESPN Inc. is a Delaware corporation which transacts and conducts business across the nation and the world, including within the state of Missouri and this Eastern District of Missouri both directly and through its instrumentalities, agents, collaborators, joint venturers and nominees ESPN Enterprises and ESPN Home Media.

10.      Upon information and belief, ESPN Enterprises, Inc. is a Delaware corporation which transacts and conducts business within the state of Missouri and this Eastern District of Missouri, and which is an affiliate, instrumentality, agent, collaborator, joint venturer and/or nominee of and with ESPN Inc and or ESPN Home Media.

11.      Upon information and belief, ESPN Home Media also transacts and conducts business within the state of Missouri and this Eastern District of Missouri, and is an affiliate, instrumentality, agent, collaborator, joint venturer, and/or nominee of and with ESPN Inc, and/or ESPN Enterprises.

12.      All actions and inactions of ESPN Inc., ESPN Enterprises, and ESPN Home Media described and alleged herein were taken on behalf of themselves and each other, as agents or representatives of each other, and pursuant to a joint venture and common business design and plan intended to, and which did, benefit all such Defendants.

13.      Hereinafter, ESPN Enterprises Inc, ESPN Home Media, Inc, and ESPN, Inc. shall be jointly and collectively referred to as "ESPN" or the "ESPN Defendants."

14.      Upon information and belief, Defendant Amazon.Com is a multinational electronic commerce company headquartered in Seattle, Washington, which transacts and conducts business within the state of Missouri and this Eastern District of Missouri.

15.      Upon information and belief, Defendant Hastings Entertainment, Inc a/k/a gohastings.com (hereafter referred to as "Hastings") is a leading multimedia entertainment retailer that combines the sale of new and used books, videos, video games and CDs, as well as trends

merchandise, with the rental of videos and video games in a superstore format and via its online retail operation, gohastings.com

16.     Upon information and belief, Amazon.com and Hastings took the actions described herein on their own respective behaves and for their own respective profit, and also as agent of, on behalf of, pursuant to a joint venture with, or otherwise in collusion or combination with And1 and/or the ESPN Defendants.

17.     Hereafter, And1, the ESPN Defendants, Amazon.Com and Hastings may be referred to from time to time as the "Defendants."

18.     This Court has federal jurisdiction under 28 U.S.C. § 1331 as this cause of action concerns claims arising under the Copyright Act (17 U.S.C. §§ 101, et seq.), claims arising under the Lanham Act (15 U.S.C. §§ 1125), and arising under 28 U.S.C. § 1338(a) and (b).

19.     This Court has jurisdiction over the state law actions asserted herein pursuant to 28 U.S.C. § 1332 in that this action is between citizens of different states to which an amount in controversy exceeds $75,000.  Further this Court has jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

20.     This Court has personal jurisdiction over each of the several Defendants in that each is transacting or otherwise conducting business throughout the State of Missouri and specifically, in the Eastern District of Missouri, that each of the torts and wrongful acts were taken in or had effect felt in the Eastern District of Missouri and/or because they can be found here.  By further reason, each of the Defendants  acts alleged herein were taken with the knowledge and intent that said acts would have an effect on and  in the State of Missouri and within the Eastern District of Missouri.

21.     The Defendants have promoted, advertised, solicited business, have conducted and transacted business and sales in the State of Missouri and this District and have knowingly

placed goods into the stream of commerce with knowledge and the intent that they would be sold in

the State of Missouri and this District, have caused copies of the "Mixtape X" DVD more

specifically described below and of the materials on such DVD to be advertised, promoted, sold,

transferred, and displayed throughout the Eastern District of Missouri, and with the intent that the

same be shared and listened to by persons in and throughout the Eastern District of Missouri and

with knowledge that the same would be listened to by persons situated within the Eastern District of

Missouri, and with the intent and/or knowledge that others would copy the content of such Mixtape

X DVD within this Eastern District of Missouri..

22.        Venue is proper in this District pursuant to 28 U.S.C. §1391(a), (b), and (c) and

28 U.S.C. § 1400(a).

## THE AND1 MARKETING PLAN

23.        Defendant And1 is, and has been at all times relevant hereto, a manufacturer,

seller and distributor of basketball shoes, other athletic footwear, sporting apparel and sporting

goods.

24.        At all times relevant hereto, the ESPN Defendants have been primarily in the

business of sports media presentation, through the production, presentation, distribution and sale of

televised sporting events and programming, delivery of online sports content, and the production

and sale of sports related DVD's, Blu-Ray discs and other media.

25.        On or before 1990, Defendant And1's predecessor in interest adopted and focused

on a marketing plan and advertising campaign to sell its products, increase its market share, increase

the value of its trademarks, and increase the value of its brand name through the:

    a.   recognition of, and capitalization on, the fact that some or all potential purchasers

        of its products appeared to appreciate, listen to and identify with genres of music

        known as rap, hip hop, and R&B;

  b. recognition of, and capitalization on, the relationship between rap, hip hop or R&B artists and basketball and basketball related products; and

  c. recognition of, and capitalization on, the fact that associating basketball related products and other sports and athletic- related products with a combination of basketball imagery and a certain type of quality hip hop/rap/R&B music in the minds of such potential product purchasers would lead to increased good will, brand recognition, trademark worth, and sales and distributions of its athletic products.

26. The integrated plan and platform adopted and used by Defendant And1's predecessor to promote its brand name and image and to sell its basketball footwear and other products (hereafter referred to as the "Marketing Plan") was comprised of identifiable, interrelated and indispensible component parts which were, upon information and belief:

  a. the use of rap/hip hop/ R&B and basketball highlight "Mixtapes" and the music and content contained thereon, as more fully described below;

  b. the maintenance of And1 websites;

  c. the use of street and professional basketball player use and/or endorsement of their shoes, athletic cling, and other products;

  d. sponsoring "Mixtape Tours" in which touring "all star" basketball teams played exhibitions in various cities under the And1name; and

  e. the use of broadcast programming on and in conjunction with ESPN cable and satellite networks.

27. The "Mixtapes" used as part of the interwoven marketing efforts were and are audio/video presentations which associate And1 brand names, trademarks, and products with a certain type of upbeat, driving, quality rap, hip hop and/or R&B music, and basketball highlights and

other scenes, intended to identify the And1 brand and trademark, and And1 products with an urban

lifestyle.

28.      The Mixtape component of the Marketing Plan included and relied upon an initial

distribution of Mixtapes produced and distributed by or for Defendants with the knowledge and

intent that:

      a.  The purchases and viewers of the Mixtapes would come to desire and purchase

          And1 merchandise;

      b.  original copies of the Mixtape's that were distributed would be and were viewed

          by and shared with persons other than the original recipients;

      c.  the distribution of Mixtapes would and did lead to widespread copying of portions

          of such Mixtapes and/or the entire Mixtapes and the distribution of these copies to

          be listened to by others;

      d.  the distribution of Mixtapes and the copies of the content thereof would and did

          lead to all or portions of such Mixtapes being posted on websites from which they

          could be listened to by others, and being exchanged through peer to peer networks,

          and other sharing websites which also allowed them to be listened to and/or

          viewed by others, and for additional copies of their content to be posted again and

          again and to be shared and re-shared; and

      e.  the further distribution and sharing of such ripple effect copies as a result of such

          sharing and posting by others would further spread the influence and promotional

          effect of the Marketing Plan and cause sales of product and increased brand name

          recognition and trademark value for the And1 products and brand names and

          trademarks.

29.      In common marketing parlance, the Mixtape component of the Marketing Program was based on the knowledge and intent that the Mixtapes would "go viral" and would be published and republished by others on the internet and elsewhere, so that the content of the original Mixtapes would be heard and viewed by substantially more persons than those originally receiving them through direct distribution.

30.      The And1 marketing plan was successful.

31.      As a result, the ESPN Defendants recognized that by associating their various products and services with the hip hop, rap and R&B musical genres and with And1 and the Marketing Plan,  the ESPN Defendants would also receive increased good will and brand name recognition among the Urban Oriented Consumer demographic, would receive increased website traffic to their websites, and would enjoy increased marketing, sale and distribution of the various products and services sold by ESPN Defendants, including those involving the game of basketball, to such Consumers.

32.      The ESPN Defendants thus intentionally set out to associate themselves with the Mixtapes distributed by And1 and the ripple effect copies, described above, that it also knew would be produced, distributed and shared by others, and to profit therefrom.

33.      In addition, Defendants Amazon.com and Hastings also recognized that by associating their respective websites, products and services with the hip hop, rap and R&B musical genres and with And1 and ESPN, and by agreeing to sell the Mixtapes from, through, and on its websites and retail locations, it would receive increased web traffic as a result of persons searching the internet for the product and would profit from the sale of Mixtapes copies and also from the sale of other merchandise to persons brought to their site or stores  by a search for Mixtapes and/or the songs thereon and thus intentionally associated themselves with and agreed to act on behalf of And1

and the ESPN Defendants, and to sell, market and publicize mixtapes as part of their role in the Defendants' marketing plan and venture.

34.　　　　In addition, upon information and belief, Amazon.com and perhaps Hastings, also periodically used the fact they sold Mixtapes and specifically Mixtape X described below as a vehicle to sell other products and merchandise for their profit and other benefit.

### Mixtape X

35.　　　　In and around 1998, And1's predecessor developed and distributed the inaugural Mixtape.

36.　　　　Subsequently, And1's predecessor developed and produced additional Mixtapes as part of the Marketing Plan.

37.　　　　In or around June 2005, Defendant And1 purchased and acquired its above-described predecessor and its predecessor's business.

38.　　　　Defendant And1 then decided to continue and adopt its predecessor's Marketing Plan as its own, and to continue its work with, and relationships with, the other Defendants in connection therewith.

39.　　　　Sometime prior to 2008, Defendants recognized that it was desirable to create and distribute another Mixtape into the market as part of the And1 integrated Marketing Plan.

40.　　　　Defendants thus set out to create and distribute Mixtape X, knowing and intending the same would be published and distributed by themselves, but also would again be listened to, viewed, shared, posted, copied, published and republished by others, and knowing and intending the distribution of the same would create ripple effect copies through the copying, promotion, sharing, distribution and publication and republication of portions of such Mixtape X or the entire Mixtape X by others and would generate increased product sales and increased web traffic to the Defendants' internet sites.

41.      Defendants assembled the necessary basketball highlights, products and trade names they intended to insert into Mixtape X, and the necessary high quality rap, hip hop, and R&B music that they knew and intended would work within Mixtape X (as in the past), intending to distribute the Mixtape X as part of the integrated Marketing Plan to cause sales of Mixtape X, other And1 products, other products being sold by Amzason.com and/or Hastings, and increased brand name recognition, trademark value and website traffic and revenues for all Defendants.[1]

### The Unauthorized Use of "I am the Greatest" Without Plaintiff's Knowledge or Consent

42.      In or around November 2006, Plaintiffs Jackson wrote, conceived, developed, created, articulated, and authored a rap/hip hop song entitled "I am the Greatest" (hereafter "the Song") out of its own creativity and endeavor and at its own expense and as a commercial, profit-making endeavor, intending to use the same for its own commercial and economic gain.

43.      Jackson was the sole author of the music, lyrics and all components of the Song "I am the Greatest," including its rhythms, beat, melody and composition.

44.      While in the process of creating Mixtape X for use in their Marketing Plan, Defendants and/or their agents, recognized that:

   a.  Jackson's Song was a high quality song of the type that fit the necessary

       requirements to be used as, and would be of great value if used as, one of the

       rap/hip hop/ R&B songs on a Mixtape to be used as part of the Marketing Plan;

       and

---

[1] Plaintiffs are aware or believe that some or all actions of Defendants involved in the creation, sale and distribution of the Mixtapes were taken by others acting under contract with, or otherwise on behalf of or at the instruction of Defendants; All such actions, however, were taken by such other persons at the direction of, for the benefit of, and on behalf of, Defendants, and Defendants were and are responsible for all actions and inactions of such hired or contracted persons the same as if they were direct employees of Defendants. All such actions and inactions were and are thus the actions of Defendants for which Defendants are liable.

b.  the Song would cause and/or contribute to the sale of Defendants' products and services, function as part of the interrelated Marketing Plan, and cause and/or contribute to the maintenance and increase in the value of their brand names and trademarks, and website related revenues if used in Mixtape X.

45.     Defendants and those working for them did not contact or discuss with Mr. Jackson whether he would be willing to reach an agreement that would allow the Song to be commercially used by Defendants to sell their various products or to increase the value of their trademarks or brand name, and thus did not and could not secure permission or authorization to copy or use the Song or Plaintiffs Jackson's performance of the Song.

46.     As of the date of Defendants' creation and distribution of Mixtape X, Jackson had not released, sold or distributed a copy of the Song nor authorized or licensed anyone else to allow the release, sale or distribution of the Song.

47.      Defendants' never asked Jackson if they could utilize the Song, or any recording of Jackson singing the Song, in connection with their Marketing Plan or Mixtape X.

48.     Nonetheless, Defendants and/or those working for and on behalf of Defendants somehow obtained an unreleased copy of Jackson singing the Song.

49.     Despite having no permission or authorization to use Jackson's song, voice, recording or other aspects of the recorded Song, Defendants misappropriated, used and exploited the copyrighted song, using the same as part of the Mixtape component of their Marketing Plan to sell products for profit, to increase or maintain the value of their websites, brand names and trademarks, and to otherwise secure economic value and profit.

50.     Defendants then attempted to cover up and hide the fact that it was Jackson's original work by falsely and incorrectly attributing the song to themselves or others rather than Jackson, by refusing to provide authorship attribution on the packaging of any DVD's containing

Mixtape X or on the websites maintained for and on behalf of Defendants which sold, marketed or distributed Mixtape X, and their other products and by intentionally omitting reference to the Song in the list of songs published along with Mixtape X.

51.     Defendants used and distributed the Song as part of Mixtape X and intended and enabled others to then republish, post, share and further distribute the Song as part of the Marketing Plan to cause sales of Defendants' products and to increase or maintain the value of Defendants' brands and trademarks and websites.

52.     When Plaintiffs learned of the wrongful use of the Song to sell product and to enhance brand name and trademark value, he demanded that Defendants cease such use and prevent and cease the publication and republication of the same on websites and through peer to peer and other sharing vehicles.

53.     Despite such demand, Defendants took no or limited action to prevent the continued direct distribution of copies of the Song and took absolutely no efforts to prevent the continued sharing, copying, and distribution by the others they had enabled and desired to make such copies, and continued to utilize the Song to generate web traffic and other revenues.

54.     On or about May 10, 2010 (the "Registration Date") the United States Copyright Office confirmed Jackson as the author of the Song and as the holder of the Copyright covering the Song and registered such Copyright in its name.  See Certificate of Registration, attached hereto and incorporated.

55.     As of December 2010,  January 2010, and February 2011, Defendants websites still listed the product as available for sale so that a web search for Mixtape X would direct people to their websites, and the Mixtape X was still being sold by Defendants' sales force and network, including Defendant Amazon.Com and Hastings.

56.     The Defendants, including at least Defendant Amazon.com and Hastings, and other persons acting in conjunction with, at the direction of, and or facilitated by, the Defendants continued to infringe Plaintiff's copyright by selling the DVD containing the Song after registration of Plaintiff's copyright and after notice to And1 of Plaintiffs claims of infringement.

57.     Thus, upon information and belief, Defendants, including Amazon.com and Hastings, continued to knowingly sell Mixtape X with knowledge that in so doing they were selling the copyrighted Song without authorization, after the copyright office had issued the registration certificate for the copyright to Plaintiffs Jackson and at least Defendant And1 had been notified of Plaintiff's discovery of the infringing activities.

58.     Defendants distributed their infringing recording of the Song with the object of promoting its use by others to further infringe Plaintiff's copyright, as shown by clear expression and other affirmative steps taken to foster infringement.

59.     As a result of acts of the Defendants alleged herein, Plaintiffs has suffered and is suffering substantial damages, including damages to goodwill and reputation, diversion of trade, loss of profits, and a dilution of the value of the Plaintiff's rights, all of which are not yet fully ascertainable.

60.     Upon information and belief, as a direct result of the wrongful copying, sale and distribution of the Song by Defendants and by those viral distributors of the Song who's copying, sale, and distribution of the Song was intended, enabled and fostered by Defendants as part of the Mixtape component of the Marketing Plan:

    a.   Defendant And1 received profits from the sale of its products promoted and induced by the Marketing Plan, including the Song on Mixtape X, in an amount to be proven at trial but believed to exceed several million dollars;

b.  A significant number of persons,  believed to be over one hundred thousand and perhaps more than five hundred thousand persons, were able to listen and relisten to the Song on Defendants Mixtape X and through postings and repostings, and peer to peer and other sharings of the Song, and thus did not need to, and did not, download or listen to the Song via methods authorized by Plaintiffs with respect to which Plaintiffs would have been compensated;

c.   Defendants directly profited from their sale of the Song as part of Mixtape X to a number of persons to be proven at trial but believed to be at least sixteen thousand persons; and

**d.**  Defendants received increased traffic to websites and retail locations maintained by them and others which generated additional revenues to Defendants

## COUNT I -- COPYRIGHT INFRINGEMENT UNDER 17 USC § 106, et seq.–

### Direct Infringement

61.      Plaintiffs reallege and incorporate by reference Paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62.      Plaintiffs  are the sole  proprietor, owner and holder of all rights, title, and interest in and to the copyright for the work contained in the Song "I am the Greatest."

63.      The United States Copyright Office confirmed Jackson as the author of the Song and as the holder of the Copyright covering the Song and registered such Copyright in its name.  See Certificate of Registration, attached hereto and incorporated herein as Exhibit A.

64.      The Song constitutes a registered work pursuant to the terms of the United States Copyright Act

65.      Jackson thereafter transferred and assigned all rights, including the copyright, to the Song to DJI, and transferred any and all accrued actions for infringement to DJI as part of that assignment.

66.      Sometime in or prior to 2008, Defendants secured a copy of an unpublished recording of Plaintiffs performing the Song, and then prepared derivative works and or collective works utilizing Plaintiffs Jackson's rendition of the copyrighted song without Jackson or DJI's knowledge or consent and fostered, induced, aided, assisted and cooperated with others who have done so.

67.      Plaintiffs have complied in all respects with the Copyright Act and with all of the laws of the United States governing copyright.

68.      As the owners of the copyright to the Song, Plaintiffs enjoy, and have enjoyed at all time relevant hereto, the exclusive rights and privileges in and to the copyright covering the Song and all the protected material contained therein.

69.      The actions and inactions of Defendants set forth in this Complaint are violations of the exclusive rights of the Plaintiffs to license, use, reproduce copies and/or derivative works, and the purported licensing, use, distribution, performance and display of elements of the copyrighted work to the commercial advantage of Defendants as set forth herein is in violation of the Copyright Act, 17 U.S.C. 106, et seq

70.      Defendants committed their copyright and other violations both prior to and since the registration of the copyright by Plaintiffs Jackson.

71.      The violations of Defendants have caused and are continuing to cause Plaintiff damages as set out above and as proven at trial, and Defendants have profited and received revenues from their violations of Plaintiff copyrights as set forth above and proven at trial, which profits and/or revenues are properly disgorged to Plaintiff.

72.     The Plaintiffs lost revenues from their inability to sell copies of the Song due to the widespread free distribution of the Song engendered by defendants were reasonably foreseeable to Defendants and such free distribution was an intended result of Defendants' actions.

73.     With respect to the post-registration violations, Plaintiffs are entitled to an award of costs and attorneys fees.

74.     Plaintiffs are also entitled to the award of statutory damages pursuant to section 17 USC § 504.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment in their favor and against the Defendants, determine that none of the Defendants had any right, title or authority to use or purport to authorize or license others to use the copyrighted song at issue, enjoining the Defendants and all those acting in concert with them from taking any further actions to purport to use or license the copyright covering the song Work or any characters contained therein, and awarding Plaintiff:

    a.   Actual damages as proven at trial for copyright infringement pursuant to 17 USC § 504 (a) (1) and (b).

    b.   an amount equal to all profits, income, receipts, or other benefit derived by the Defendants and/or by any and all persons who were induced into infringing activity by Defendants (including but not limited to all sales receipts, license fees, royalties or other amounts), which were derived from the performance, reproduction, copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereinafter devised, that improperly or unlawfully infringed Plaintiffs copyright pursuant to 17 USC § 504 (a)(1), including but not limited to website profits and enhanced value, trademark and brand value, profit from the sale of Mixtape X, and profits, income, receipts and

or other benefits received or derived by Defendants from the sale of all products purchased by consumers and which purchases were caused in whole or in part by, or otherwise resulted from, the Marketing Plan and the Song.

c.  For punitive damages in an amount sufficient to punish and deter these Defendants and others from the indicated and similar conduct in the future.

d.  Attorneys' fees as available under the Copyright Act, 17 USC §§ 505.

e.  For costs and interest pursuant to the Copyright Act, 17 USC § 505.

f.  statutory damages pursuant to the Copyright Act, 17 USC § 504 in an amount not less than $30,000, and a finding that the infringement was willful, with damages in an amount of not less than $150,000, if and when elected by Plaintiff.

g.  For other and further relief as this Court deems just and proper.

## COUNT II – CONTRIBUTORY INFRINGEMENT

75.     The allegations of paragraphs 1 through 74 above are hereby incorporated into this count by reference as if fully set forth herein.

76.     Through the conduct alleged herein, each of the Defendants facilitated, encouraged and assisted in the infringement of the rights of the Plaintiffs and the Copyrights as referenced herein, and Defendants knew or should have known that such files were being copied, shared, distributed and made available online through sites such as YouTube, MetaCafe, Limewire, and other websites, in addition to traditional methods of copying, sharing and distribution.

77.     Defendants received reasonable knowledge of the fact that specific files with Plaintiffs copyrighted musical compositions and sound recordings were being created by others.

78.     Defendants knew or had reason to know of, and/or had actual or constructive knowledge of, the infringing activity of persons who obtained copies of the Song directly or indirectly off of Mixtape X.

79. Defendants induced, caused, and/or materially contributed to the infringing conduct of such persons and/or engaged in personal conduct that encouraged or assisted the infringement by such persons.

80. Defendants provided the facilities for direct infringement.

81. Defendants are thus contributorily liable for all damages suffered by Plaintiffs as a result of the infringement of their copyrights suffered as a result of the widespread copying, distribution, and sharing of the Song without Plaintiffs' authorization, which damages are more fully described above.

82. Defendants are also liable to Plaintiffs for any and all profits and benefits received by Defendants as a result of the infringement of Plaintiffs copyrights to which Defendants contributed and which Defendants facilitated

WHEREFORE, Plaintiffs respectfully requests the Court enter judgment in their favor and against the Defendants, determine that none of the Defendants had any right, title or authority to use or purport to authorize or license others to use the copyrighted song at issue, enjoining the Defendants and all those acting in concert with them from taking any further actions to purport to use or license the copyright covering the song Work or any characters contained therein, and awarding Plaintiff:

a. Actual damages as proven at trial for copyright infringement pursuant to 17 USC § 504 (a) (1) and (b).

b. an amount equal to all profits, income, receipts, or other benefit derived by the Defendants (including but not limited to all license fees, royalties or other amounts) and/or by any and all persons or entities for whose infringement Defendants are vicariously or contributorily responsible or which were induced into infringing activity, which were derived from the performance, reproduction,

copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereinafter devised, that improperly or unlawfully infringe Plaintiff's copyright pursuant to 17 USC § 504 (a)(1) and (b) as well as a proportionate share of all profits, income, receipts and or other benefits derived from related products sold on account or such products were purchased by consumers after being induced by Plaintiffs song.

c.  For punitive damages in an amount sufficient to punish and deter these Defendants and others from the indicated and similar conduct in the future.

d.  Attorneys' fees as available under the Copyright Act, 17 USC §§ 505.

e.  For costs and interest pursuant to the Copyright Act, 17 USC § 505.

f.  statutory damages pursuant to the Copyright Act, 17 USC § 504 in an amount not less than $30,000, and a finding that the infringement was willful, with damages in an amount of not less than $150,000, if and when appropriately elected by Plaintiff.

g.  For other and further relief as this Court deems just and proper.

## COUNT III – VICARIOUS INFRINGEMENT

83.     The allegations of paragraphs 1 through 82 above are hereby incorporated herein by reference as if fully set forth herein.

84.     As the purported copyright holder over Mixtape X and the promulgator thereof, Defendants had the ability to prevent or limit the distribution of the Song and to monitor and patrol the internet, including such sites as YouTube, MetaCafe, Limewire, etc, to prevent the posting, sharing, copying, and distribution of all or any portion of the Mixtape X, including the Song.

85.     However, Defendants had a direct financial interest in allowing such activities to continue in that the availability of the infringing material acted as a draw for customers to their respective products and websites enhanced the attractiveness of their products, websites, reputation and goodwill, and caused the sale of their products.

86.     Each of these Defendants enjoyed a direct financial benefit from the infringing activity of those persons who copied, posted and shared the infringing material made available to them by Defendants through Mixtape X

87.     Defendants thus did not use its ability to prevent infringing activity and to patrol online websites and demand that such sites "take down" infringing postings and shared files containing the Song file, despite such sites express policies allowing purported copyright holders (such as Defendants with respect to Mixtape X) to do so.

88.     Defendants had the ability to search and identify infringing musical recordings of their work which included Plaintiffs' Song and the right to demand that postings of infringing files be removed, and to seek to bar participation of users who engage in the transmission of infringing files, but did not and have not done so.

89.     Defendants' revenue was and is directly dependent upon increases in product sales and more consumers purchased products as the scope of the distribution of the marketing of the Mixtape X video, including the Song, expanded.

90.     Defendants turned a blind eye to detectable acts of infringement for the sake of profit and failed to police the conduct of the primary infringers, failed to exercise its rights to prevent the exchange of copyrighted material, took no steps to ensure any rights in or to the Song, and with willful ignorance, ignored easily detectable acts of infringement.

91.     By taking the actions and not taking the inactions set forth above, the Defendants vicariously infringed Plaintiff's copyright, and induced others into infringing Plaintiff's copyrights

in such work, and did so before the Registration Date and did so and continue to do so after the Registration Date of the copyright referred to herein.

92.     The direct, contributory, and vicarious infringement by Defendants of Plaintiff's copyrights and the deliberate inducement of others to infringe Plaintiff's copyrights has been willful and intentional.

93.     Defendants knowingly and willingly purported to license, reproduce, display, distribute and utilize for purposes of trade and promotion unauthorized copies or derivative versions of the Song and its copyrighted elements.

94.     The Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiff.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment in their favor and against the Defendants, determine that none of the Defendants had any right, title or authority to use or purport to authorize or license others to use the copyrighted song at issue, enjoining the Defendants and all those acting in concert with them from taking any further actions to purport to use or license the copyright covering the song Work or any characters contained therein, and awarding Plaintiff:

a.   Actual damages as proven at trial for copyright infringement pursuant to 17 USC § 504 (a) (1) and (b).

b.   an amount equal to all profits, income, receipts, or other benefit derived by the Defendants (including but not limited to all license fees, royalties or other amounts) and/or by any and all persons or entities for whose infringement Defendants are vicariously or contributorily responsible or which were induced into infringing activity, which were derived from the performance, reproduction,

copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereinafter devised, that improperly or unlawfully infringe Plaintiff's copyright pursuant to 17 USC § 504 (a)(1) and (b) as well as a proportionate share of all profits, income, receipts and or other benefits derived from related products sold on account or such products were purchased by consumers after being induced by Plaintiffs song.

c.   For punitive damages in an amount sufficient to punish and deter these Defendants and others from the indicated and similar conduct in the future.

d.   Attorneys' fees as available under the Copyright Act, 17 USC §§ 505.

e.   For costs and interest pursuant to the Copyright Act, 17 USC § 505.

f.   statutory damages pursuant to the Copyright Act, 17 USC § 504 in an amount not less than $30,000, and a finding that the infringement was willful, with damages in an amount of not less than $150,000; and

g.   For other and further relief as this Court deems just and proper.

## COUNT IV -- VIOLATIONS OF THE LANHAM ACT, 15 U.S.C. 1125, ET SEQ, FOR FALSE ADVERTISING, FALSE ENDORSEMENT AND/OR UNFAIR COMPETITION

Plaintiffs, for their claims of violations of the Lanham Act under 15 U.S.C. 1125 against all Defendants state as follows:

95.         Plaintiffs reallege and incorporate by reference paragraphs 1 through 60 of this Complaint as if fully set forth herein.

96.         In pertinent part, 15 U.S.C. 1125 §43(a) provides as follows:

(a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of its or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of its or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.  See 15 U.S.C. § 1125, §43.

97.       Defendants intentionally, wilfully, knowingly and wrongfully, are using, advertising and selling the originality of Plaintiffs' product by claiming products containing the Song were and are produced solely by themselves and falsely listing (or refusing to list) proper credit to Plaintiffs on their products or packaging materials and thus falsely designating the originality as their own and the products as solely their own.

98.       By so doing, such Defendants are causing mistake, confusion and deception as to the true origin of such products and the originality of such products, and have falsely and deceptively advertised and promoted such products.

99.       Such Defendants have also intentionally, willfully, knowingly and wrongfully advertised, distributed and promoted the Song without the consent, express or implied, permission, or authorization of the Plaintiffs and as such, have misrepresented the nature and relationship between Plaintiffs and Defendants and Defendants products.

100.     Further, Defendants have failed to properly credit the Plaintiffs as the true creators of and origin of the Song, and have intentionally refused to identify Plaintiffs as the true creators of and copyright holders of the Work.

101.     Upon information and belief, consumers have been confused as to the origins of the Song which has been falsely attributed to be the work of Defendants.

102.   Plaintiffs have been and will continue to be injured as a result of the false advertisements made by said Defendants, and its agents and representatives, in the loss of sales, profits, royalties, lost expectancies, and revenues they were and are otherwise entitled to, and by the loss of goodwill that is associated with its property interests.

WHEREFORE, Plaintiffs request the Court enter judgment in its favor and against the Defendants and make an award to Plaintiffs:

    a.   For actual damages pursuant to 15 U.S.C. 1117 (a) (2).

    b.   For an accounting of all profits, income, receipts, or other benefit derived by Defendants pursuant to 15 U.S.C. 1117 (a) (1).

    c.   For a reasonable royalty,

    d.   Treble damages and an amount to be determined by this Court to be just under 15 U.S.C. 1117 (a) (3).

    e.   Attorneys' fees as available under 15 U.S.C. 1117 (a) (3).

    f.   For costs as available under 15 U.S.C. 1117 (a) (3).

    g.   For other and further relief as this Court deems just and proper

## COUNT V – WASTE (DEFENDANTS)

Plaintiffs for their claim for waste against the Defendants, states as follows:

103.   Plaintiffs realleges and incorporate by reference paragraphs 1 through 60 of this Complaint as if fully set forth herein.

104.   Defendants have damaged the worth and value of the Song, and failed to take reasonable steps to promote, protect, and achieve greater benefits, fees, and results for Plaintiffs and the Song

105.     The Defendants put the Song into the public stream of commerce knowing there was a substantial risk and a virtual certainty that others would duplicate the Song and further distribute it, thus robbing Plaintiffs of future customers for the Song.

106.     As a result, Plaintiffs have been harmed in the underutilization and improper use of its property interests, the loss of the ability to sell its Song to persons who have both purchased it in a product sold by Defendants and who have aquired it from illegal downloads or other copies made possible only because of Defendants illegal and unauthorized distribution of the same, and Plaintiffs will be unable to earn as much from the sale of the Song in the future.

107.     The Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiff.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against the Defendants for all harm incurred as a result of the waste of its property rights and interests in the Song and its property rights contained therein, including, without limitation, all sales, income and profit lost, for punitive damages in an amount sufficient to punish and deter this defendant and others from the indicated and similar conduct in the future, economic harm and damages in failing to properly utilize the works, and all other remedies this Court deems just and proper.

## COUNT VI -- TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS EXPECTANCY (DEFENDANTS)

Plaintiff, for their claim for tortious interference with prospective business expectancy against the Defendants, state as follows:

108.         Plaintiffs reallege and incorporate by reference paragraphs 1 through 107 of this Complaint as if fully set forth herein.

109.           Plaintiffs had a reasonable expectancy of entering into valid business relationships with third parties to obtain business, goodwill, and other pecuniary interests associated with the use of its property interests and the Song.

110.           The Defendants knew or had reason to know that Plaintiffs Jackson would be entitled to and would have received substantial financial payment and business relationships from third parties on account of its ownership of the Song.

111.           The Defendants purposefully and intentionally interfered with Plaintiffs' business and economic expectancy from ripening into a valid business relationship by taking the wrongful actions and inactions set forth above.

112.           Plaintiffs have been harmed through the loss of business, including the loss of reasonable royalties, profits, revenues, and creative control over derivative works and other projects, resulting from the purposeful and intentional acts of the Defendants.

113.           The Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiff.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against the Defendants for all harm incurred as a result of the wrongful interference with the business expectancy of the Plaintiff, including, without limitation, all sales, income and profit earned by the Defendants thereon, for punitive damages in an amount sufficient to punish and deter this Defendants and others from the indicated and similar conduct in the future, all pre and post judgment interest obtained therein, all costs incurred as a result of this action and all other remedies that this Court deems just and proper.

## COUNT VII -- VIOLATIONS OF THE MISSOURI MERCHANIDSING PRACTICES ACT

Plaintiff, for their claim for violations of the Missouri Merchandising Practices Act, state as follows

114.        Plaintiffs reallege and incorporate by reference paragraphs 1 through 60 of this Complaint as if fully set forth herein.

115.        Pursuant to the facts set forth above, Defendants misrepresented, deceived, and suppressed Plaintiffs from recognition in connection with the sale of Mixtape X.

116.        The misrepresentations occurred in connection with sale of merchandise in trade and commerce.

117.        In connection with the sales of goods, Defendants made false statements and representations in connection with the goods sold to consumers.

118.        The deceptive conduct by the Defendants has caused and will continue to cause a likelihood of confusion or misunderstanding as to the affiliation or association of Plaintiffs and disparage the business and goodwill of the Plaintiffs by providing consumers with false and misleading information.

119.        As a result of Defendants' acts of unfair competition as alleged above, Plaintiffs will suffer and has suffered a loss of business, profits, goodwill, and reputation in amounts that are yet unascertained, and Defendants are liable to Plaintiffs for costs and attorney fees, in addition to all injunctive relief pursuant to law.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against Defendants as a result of their deceptive practices and relief for all harm incurred as a result of the deceptive and unfair practices of the Defendants, and demand costs and attorneys fees, and any other relief this Court deems just and proper.

## COUNT VIII -- CIVIL CONSPIRACY

Plaintiffs for their claim for civil conspiracy directed at Defendants, state as follows:

120.        Plaintiffs reallege and incorporate by reference paragraphs 1 through 119 of this Complaint as if fully set forth herein.

121.        Each of the Defendants, on its own motive, knowingly and voluntarily participated in a common scheme to use the Plaintiff's Song,  which each knew was owned by Plaintiffs,  for their own commercial advantage by engaging in the wrongdoing noted above and in timing their improper activities in such a manner as to cross market and benefit from the wrongdoings of the other Defendants.

122.        Each performed overt acts in furtherance of said agreement to illegally utilize, sell, and unlawfully distribute and transfer various products and merchandise which contained copyrightable elements of the Song, and or utilized, sold and benefitted from the cross marketing of materials in association with the Song.

123.        That said unlawful activity has caused monetary and economic harm to Plaintiffs Jackson.

124.        Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, the Plaintiffs request the Court enter judgment in their favor and against Defendants, jointly and severally, and award Plaintiffs their actual damages, including a reasonable lost royalty, for such loss and/or an amount equal to the profits, revenues and sales wrongfully earned by defendants, pre and post judgment interest costs incurred as a result of this action, punitive damages, attorneys fees, and everything else this Court deems just and proper.

## COUNT IX – TORTIOUS INTERFERENCE WITH RIGHT OF PUBLICITY

Plaintiff, for its claim of Tortious Interference with Right of Publicity against all Defendants, state as follows:

125.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 60 of this Complaint as if fully set forth herein.

126.     All Defendants herein knew or should have known that, as the creator of the Song and a professional rap artist and musical producer, Plaintiff Jackson has an established identity and persona with a commercial and pecuniary value in demand in the rap and urban industry.

127.     Defendants knew that promoting and advertising the Song without acknowledging it to be the creation, work and voice of Jackson, while utilizing the same for Defendants own financial gain, would significantly diminish the value of Plaintiffs Jackson's endorsements and the pecuniary value of his persona and identity for commercial purposes.

128.     Defendants nonetheless intentionally and wrongfully took the above noted wrongful and unauthorized acts, associated products with the Song without Plaintiff's participation or approval, failed and refused to credit or acknowledge Plaintiff Jackson's association with the Song, and specifically took efforts to distance Plaintiff Jackson from the Song and the related products associated thereto in the minds of the public.

129.     Defendants did so with the intent and/or foreseeable effect of interfering with Plaintiff's reasonable expectations that the value of the public recognition of Plaintiffs Jackson and its right of publicity would increase as the result of the distribution of its Song and the association of other products.

130.            As a result of the Defendants actions and inactions, Plaintiffs have been harmed, including damages to Plaintiffs Jackson's goodwill and reputation, diversion of trade, loss of profits, and a dilution of the value of the Plaintiffs' rights.

131.            Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, actual malice and with such gross negligence as to indicate a wanton and conscious disregard of the rights of the Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs demand judgment against all Defendants for all harm incurred as a result of the tortious interference with the right of publicity of the Plaintiff Jackson, including, without limitation, all sales, income and profit earned by the Defendants thereon, all pre and post judgment interest obtained therein, damages for the loss of revenues to the Plaintiffs, punitive damages in an amount to punish and deter Defendants and others from similar conduct, all costs incurred as a result of this action and all other remedies that this Court deems just and proper.

### DEMAND FOR A TRIAL BY JURY.

Plaintiffs hereby respectfully request a trial by jury for all claims and issues raised in its Complaint that may be entitled to a jury trial.

**RIEZMAN BERGER, P.C.**

*/s/Charles S Kramer*
Charles S. Kramer  34416MO
7700 Bonhomme Avenue
Seventh Floor
St. Louis, Missouri 63105
(314) 727-0101 (phone)
(314) 727-6458 (fax)
ckramer@riezmanberger.com