**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DUTCH JACKSON IATG, LLC | ) | |
| AND MICHAEL "DUTCH" JACKSON, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO.  11-cv-00227 (CEJ) |
| | ) | |
| vs. | ) | |
| | ) | |
| THE BASKETBALL MARKETING | ) | |
| COMPANY, INC d/b/a AND 1, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF MOVING DEFENDANTS' MOTION TO DISMISS**

Defendants The Basketball Marketing Company, Inc., d/b/a AND 1, ESPN, Inc., ESPN

Enterprises, Inc., and ESPN Home Media (collectively, "Moving Defendants") file their reply

memorandum of law in further support of their motion to dismiss Plaintiffs' Dutch Jackson

IATG, LLC and Michael "Dutch" Jackson (collectively "Jackson") Complaint pursuant to Fed.

R. Civ. P. 12(b)(6) and state as follows:

## I.    INTRODUCTION

As set forth in the Moving Defendants' opening memorandum:

- Jackson's copyright claims preempt all of his related state law claims and, therefore, require their dismissal;

- Jackson's demand for statutory damages and attorneys' fees based on the Copyright Act must be dismissed because he failed to comply with the strict requirements of the Copyright Act requiring registration of his work and is therefore not eligible to make such a claim; and

- Jackson's Lanham Act claim is precluded by the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.* because Section 43(a) of the

1

Lanham Act does not apply to claims involving a failure to attribute or credit the origin of a creative work.

In response, Jackson argues that:

- The copyright claims do not preempt the state law claims because "[t]hose few state law claims included in this action are those which involve matters outside the scope of copyright and which have the 'extra element' that makes preemption inapplicable."

- The demand for statutory damages and attorneys' fees is appropriate because "each act of infringement – i.e. each sale, distribution, copying etc. – is a separate wrongful act under the copyright law" and the Moving Defendants "do not, and cannot, allege that they did not also infringe the copyright after the registration."

- The Lanham Act claim survives because the "products sold in the present case actually include the actual song recorded by the Plaintiff itself, not only in the sense that they use the song, but in the sense that they actually used the Plaintiff's own recording – the Plaintiff's voice and vocal rendition – without crediting him."

Notably, Jackson includes minimal case law to support his arguments.  This is understandable given that, as explained below, each argument fails as a matter of law.  He has included nearly every possible state law claim in his Complaint without any regard for the applicable federal statute that controls.  Jackson's "argument[s are] like a ventriloquist's attempt to present a copyright action in the voice of state law claims.  However, if the language of the act could be so easily circumvented, the preemption provision would be useless, and the policies behind a uniform Copyright statute would be silenced."  See *Daboub v. Gibbons*, 42 F.3d 285, 290 (5th Cir. 1995).  Counts IV through IX of his Complaint should be summarily dismissed.

## II.  LEGAL ARGUMENT

### A.  The Copyright Act Preempts Jackson's State Law Claims.

Jackson admits that a state cause of action is preempted under the Copyright Act if:  (1) the work at issue is within the subject matter of copyright as defined in §§ 102 and 103 of the Copyright Act, and (2) the state law created right is equivalent to any of the exclusive rights

within the general scope of copyright as specified in § 106.  Opp. at 4.  Moreover, he does not

dispute that the Court must consider whether "there is an **'extra element'** that changes the nature

of the state law action so that it is qualitatively different from a copyright infringement claim."

*Huckshold v. HSSL, L.L.C.,* 344 F. Supp. 2d 1203, 1206 (E.D. Mo. 2004) (emphasis added).

"The existence of an extra element precludes preemption only where the element changes the

nature, rather than the scope, of the action."  *Stromback v. New Line Cinema*, 384 F.3d 283, 301

(6th Cir. 2004).  As discussed below, Jackson's arguments to avoid preemption and, thus

dismissal of his state law claims, rely on unsupported, conclusory assertions of "extra elements"

for each cause of action.  The reality, however, is that none of the state law claims  contain such

an "extra element" to negate the preemption provision of the Copyright Act.  Yet, despite

Jackson's masked attempts to differentiate his state claims, in the end, they all look like, smell

like and act like a claim of copyright infringement.  Indeed, they are all qualitatively the same as

Jackson's copyright claims.  Dismissal is warranted.

### 1.      Jackson's Claim for Waste (Count V) Should be Dismissed.

Jackson argues that his claim for waste is not preempted because:

> The need to show that the value of the work itself has been 'wasted' as a
> result of the Defendants' actions, i.e., diminished on an ongoing basis,
> is however required to establish the state law claim of waste.  This is the
> different and additional damages Plaintiffs seek through the waste count
> and are not damages recoverable under a copyright claim.  The need to
> show such damage to the value of the underlying work on an ongoing
> basis is an additional element going beyond the mere showing that the
> Plaintiffs song was reproduced, distributed and/or displayed.

Opp. at 6.  In other words, without citation to *any* authority, to maintain his waste claim Jackson

argues that he will not be fully compensated under the Copyright Act for any alleged wrongs that

have damaged the value of the hip hop/rap song "I am the Greatest" (the "Song").  Jackson is

plainly wrong.

> In general, a copyright infringer is liable for either statutory damages or the copyright owner's actual damages and any additional profits of the infringer. 17 U.S.C. § 504(a). 'The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.' 17 U.S.C. § 504(b). **Actual damages are the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement**. 4 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright*, § 14.02, at 4014 (2005). *See also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985). In addition to actual damages, a prevailing plaintiff is entitled to recover all profits attributable to the infringement of the copyright. *See Eales v. Environmental Lifestyles, Inc.*, 958 F.2d 876, 880 (9th Cir. 1992) (abrogated on other grounds). **An infringer is liable for at least the 'fair value,' or market value, of the infringed plans**. *Nucor Corp. v. Tennessee Forging Steel Service, Inc.*, 513 F.2d 151, 153 (8th Cir. 1975).

*Benchmark Homes, Inc. v. Legacy Home Builders, L.L.C.*, No. 8:03CV527, 2006 WL 240613, at *1 (D. Neb. Jan. 31, 2006).

Thus, the Copyright Act indeed "provide[s] redress for . . . any damage inflicted on the value of the underlying work itself that was stolen on a going forward basis." Opp. at 6. There is no "extra element" to distinguish this claim and, as a result, it is preempted. Dismissal is required.

### 2.     Jackson's Claim for Tortious Inference with Business Expectancy (Count VI) Should be Dismissed.

Jackson ignores the Moving Defendants' argument that his claim for tortious interference with business expectancy claim is not *qualitatively different* from that of a copyright infringement action. Rather, he summarily notes, as the Moving Defendants' already did, the elements of such a claim under Missouri law and concludes as a result, they are "different from and in addition to the elements of a copyright claim." Opp. at 7. The Moving Defendants have not – and do not – dispute that the elements are different between the two causes of action. However, that is beside the point because preemption is nevertheless warranted when an extra

4

element does not change the nature of the state law action such that it is not qualitatively different from a copyright infringement claim.

Here, Jackson admits that his claim "is based in part on the improper use" of the Song. Opp. at 7.  He also argues that it is "based on the marketing and intentional efforts to affirmatively hide Dutch Jackson's creative role with respect to the song, and more importantly is based on the additional elements noted above – the existence of downstream relationships and expectations, the knowledge of same, and the interference with same."  Opp. at 8.  Even assuming all of this true, Jackson's allegations all flow from and are related to the Moving Defendants' actual use of the Song on the DVD at issue.  Thus, while the *scope* of the claim Jackson posits might be different, the *nature* remains the same (*i.e.*, redressing alleged wrongs related to the use of the Song).  Accordingly, the Copyright Act preempts Court VI and should, therefore, be dismissed.[1]

### 3.    Jackson's Claim Under the Missouri Merchandising Practices Act (Count VII) Should be Dismissed.

Jackson argues that his Missouri Merchandising Practices Act ("MMPA") claim is not preempted because, unlike his claims under the Copyright Act, the claim requires the additional element of wrongful conduct (*i.e.*, a deceptive act or statement).  Opp. at 8.  Similar to his other hollow assertions, Jackson fails to address – let alone even acknowledge – the fact that an

---

[1] The Moving Defendants cited to *Do It Best Corp. v. Passport Software, Inc.* in its opening memorandum for the basic principle that a tortious interference claim may be preempted if the claim is based on the creation of infringing copyright material.  Jackson does not dispute this proposition.  However, Jackson's further reliance on *Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2004 WL 1660814, is entirely misplaced.  Opp. at 7.  The court found that the alleged harm related to the defendant specifically inducing another party to breach its contract with plaintiff and, therefore, the tortious interference claim could stand.  *Id.* at 19.  Here, Jackson has not alleged – nor could he – that this occurred.  Rather, Jackson's tortious interference claim relies entirely on the Defendants alleged use of a protected work and therefore it is preempted by the Copyright Act.

additional element does not summarily dispense with the preemption requirement under the Copyright Act.  An "extra element" may exist, but so long as it does not change the nature of the action, as opposed to the scope, preemption is still appropriate.  Here, as stated in the Moving Defendants' opening memorandum the basis of Jackson's claim under the MMPA relates to the use of the Song without Jackson's permission.  Jackson does not dispute this fact.  As a result, there is no "extra element" changing the nature of action.  Dismissal is required.

Moreover, as previously described, even if preemption were not warranted, Jackson's MMPA claim still fails because he (i) has no standing, and (ii) even if he did his claim fails to meet the heightened pleading requirement of Fed. R. Civ. P. 9(b).  First, Jackson has no standing because he does not allege that he is a consumer who purchased or leased the product at issue for personal, family or household purposes from Moving Defendants.  Indeed, other than his conclusory assertions, Jackson ignores this plain requirement and asserts that the "consumer protection intent of the statute" is furthered by permitting him to maintain the claim.  Specifically, the relevant statute states:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. . . .

Mo. Ann. Stat. §§ 407.025 (2000). Thus, standing is a threshold requirement which Jackson utterly fails to meet.

Second, dismissal is required because Jackson has not properly alleged any details of an MMPA violation with the specificity required by Fed. R. Civ. P. 9(b).  He does *not*:  (i) identify a single case where the heightened pleading requirements were not applied to the MMPA; (ii) offer

any explanation as to why the heightened pleading requirements should not apply here; and (iii) identify any specific allegations regarding who made the false statement, when the alleged conduct took place, where the conduct took place and what specifically was said and to whom. Rather, this Court and the Moving Defendants are left to guess as to the particulars of his claim. For this additional reason, = Jackson's MMPA claim should be dismissed.  Br. at 7-8.

### 4.       Jackson's Claim of Civil Conspiracy (Count VIII) Should be Dismissed.

Jackson argues that his civil conspiracy claim is valid because it "involves a conspiracy to commit an underlying tort or wrong other than mere copyright infringement."  Opp. at 10.  He does not cite to a single additional case to support his position.  Rather, he goes on to identify allegations in the Complaint which supposedly show that "the conspiracy alleged involves more wrongs than infringement."  *Id.*  Specifically, he relies on (i) paragraph 120, which simply incorporates, as is customary, all of the previous paragraphs of the Complaint, and (ii) paragraph 122, which alleges that the agreement was to "utilize, sell and unlawfully distribute and transfer various products and merchandise which **contained copyrightable elements of the Song, and or** utilized, sold and benefitted from the cross marketing of materials in association with the Song."  Jackson conveniently omits the bolded text in his opposition.  *Id.*  Thus, although he tries to distance himself from his own allegations, the Complaint's civil conspiracy claim is based entirely on a "common scheme to use Plaintiff's Song."  Compl. ¶ 121.  It does not allege any conduct that is qualitatively different from a copyright infringement claim and, therefore, dismissal is warranted.

5.   **Jackson's Claim from Tortious Inference with Rights of Publicity (Count IX) Should be Dismissed.**

Presumably recognizing that his claim is preempted by the Copyright Act as explained in the Moving Defendants' opening memorandum, Jackson's opposition now seeks to recast Count IX as a "species of tortious interference with business expectancy which is premised on the fact that Missouri law recognizes that Jackson has and had a legitimate expectancy that he would be able to capitalize on his persona, image, voice, etc., for his and his company's economic benefit."  Opp. at 11.  Notably, Jackson fails to cite to a single case applying Missouri law to support this novel theory.

Despite the lack of support for Jackson's theory, he nevertheless asserts that such a claim is not preempted "for the reasons set out above with respect to the Tortious Interference Claim of Count VI, and for the additional reason that this count involves Dutch Jackson's persona, and not any agreements relating to the song at all."  Opp. at 12.  However, as with Count VI, this recast claim is not *qualitatively different* from that of a copyright infringement action.  He alleges, *inter alia*, that "Defendants knew that **promoting and advertising the Song** without acknowledging it to be the creation, work and voice of Jackson, while utilizing the same for Defendants own financial gain, would significantly diminish the value of Plaintiffs Jacksons' endorsements and the pecuniary value of his persona and identity for commercial purposes."  Compl. ¶ 127 (emphasis added).  Thus, even assuming that this is true, it still flows from and is related to the Moving Defendants' actual use of the Song on the DVD at issue.  Thus, while the *scope* of the claim Jackson posits here might be different, the *nature* remains the same (*i.e.*, redressing alleged wrongs related to the use of the Song).  Any diminishment of the value of Jackson's persona is clearly a direct corollary of the infringement claim.  In other words, the basis of any interference with his right of publicity is use of the Song itself.  Thus, it is within the Copyright Act's

preemption provision. *See, e.g.*, *Daboub*, 42 F.3d at 289-90 (holding preemption appropriate because "[t]he core of each of these state law theories of recovery in this case, without detailing the specific elements comprising each claim, is the same:  the wrongful copying, distribution, and performance of the lyrics of *Thunderbird*").

Moreover, the cases Jackson relies on to support the unremarkable proposition that his persona is separately protectable and independent of the copyright claims are plainly inapposite. In *Brown v. Ames*, 201 F.3d 654, 658 (5th Cir. 2000), the court held that, under Texas law, the tort of misappropriation of name or likeness protects a person's persona and is not preempted by the Copyright Act.  However, there the misappropriation consisted of the defendants' unauthorized *use of plaintiffs' names and likenesses* to market their musical performances on CD's and audio cassettes for which they also lacked any copyrights.  *Id.* at 656.  Similarly, in *Downing v. Abercrombie & Fitch*, 265 F.3d 999, 999-1000 (9th Cir. 2001), while the court found that a persona is not copyrightable, the defendant specifically used the plaintiffs' names and likenesses.  Here, as noted in the Moving Defendants' opening memorandum Jackson does not allege that his name, image or persona was used.  In fact, there is no reference to the Song on the MixTape X DVD itself.  Thus, there cannot be a distinct tortious interference with rights of publicity claim if there is *no* actual use of his name, image or persona.  *See, e.g.*, *Stanford v. Caesars Entm't, Inc.*, 430 F. Supp. 2d 749, 756 (W.D. Tenn. 2006) (finding that Copyright Act preempts state law right of publicity where, *inter alia*, "Plaintiff's claims do not involve the exploitation or misappropriation of 'the very identity or persona of [Plaintiff] as a human being").

Accordingly, the Copyright Act preempts Court IX and should, therefore, be dismissed.

**B.     Jackson Is Not Entitled To Statutory Damages Or Attorney's Fees Under The Copyright Act.[2]**

As explained in the Moving Defendants' opening memorandum, Jackson is not entitled to statutory damages and/or attorney's fees under the Copyright Act because his claims for copyright infringement of the Song commenced prior to his Registration.  In response, Jackson does not dispute that the alleged infringement commenced prior to his registration.  Rather, he argues that "[e]ven if some of the infringements occurred prior to registration, attorney's fees would still be recoverable with respect to those infringements which occurred after the registration."  Opp. at 13.  Jackson does not cite to a single case to support his position.  This is so because he is plainly wrong.  Indeed, his argument has been consistently rejected by the courts.  *See, e.g.*, *Cassetica Software, Inc. v. Computer Sciences Corp.*, No. 09 C 0003, 2009 WL 1703015, at *2 (N.D. Ill. June 18, 2009) ("Even when the plaintiff attempts to limit its claim of infringement to events that occurred after registration, § 412 prevents the recovery of statutory damages when the infringement commenced before registration of the copyright and continued after registration."); *Amador v. McDonald's Corp.*, 601 F. Supp. 2d 403, 410 (D.P.R. 2009) ("for purposes of Section 412(2), a continued infringement commences when the first act in a series of ongoing infringements of the same kind occurs"); *CA, Inc. v. Rocket Software, Inc.*, 579 F. Supp. 2d 355, 364 (E.D.N.Y. 2008) ("Where, as here, the infringement is alleged to have commenced prior to registration and continued after registration, without cessation for any appreciable duration, statutory damages and attorneys' fees are unavailable."); *Phoenix Renovation Corp. v. Rodriguez*, 461 F. Supp. 2d 411, 421-22 (E.D. Va. 2006) ("Commencement occurs when the first

---

[2] Although the entire motion has been denominated as one to dismiss under Fed. R. Civ. P. 12(b)(6), the Moving Defendants' respectfully request with regard to Plaintiff's claim for statutory damages and attorney's fees, that the Court in the alternative considering striking these demands pursuant to Fed. R. Civ. P. 12(f).

act of infringement in a series of ongoing infringements occurs.  Infringement does not

'commence' with each new act in an ongoing infringement." (internal citations omitted)); *Fox*

*Controls, Inc. v. Honeywell, Inc.*, No. 02 C 346, 2005 WL 1705832, at *7-8 (N.D. Ill. July 1,

2005) (rejecting plaintiff's argument that it is entitled to statutory damages for infringement that

commenced prior to registration, but continued after that date as well); *Cornerstone Home*

*Builders, Inc. v. McAllister, III*, 311 F. Supp. 2d 1351, 1352 (M.D. Fla. 2004); *X-It Prods., L.L.C.*

*v. Walter Kidde Portable Equip., Inc.*, 227 F. Supp. 2d 494, 527-28 (E.D. Va. 2002) ("a plaintiff

is not entitled to recover statutory damages, which include costs and attorneys' fees, for any

infringement of plaintiff's copyright that commenced prior to the effective date of copyright

registration, regardless of ether the infringement continues *after* the effective date of

registration" (emphasis in original)); *Johnson v. Univ. of Virginia*, 606 F. Supp. 321, 325 (W.D.

Va. 1985) (holding that "those alleged post-registration infringements 'commenced' prior to

registration, and thus pursuant to § 412, they provide no basis for allowing statutory damages or

attorney's fees").

     Accordingly, Jackson should be precluded from claiming statutory damages and/or

attorney's fees.

     **C.**    **The Supreme Court Opinion in *Dastar* Precludes Jackson's Lanham Act
Claims For False Advertising and False Endorsement.**

     Jackson argues that *Dastar* and its progeny are inapplicable because the Defendants "did

not merely take the plaintiffs' idea and create a new and different product based on or copying

that idea," but "[r]ather[] the products sold in the present case actually include the actual song

recorded by the Plaintiff itself, not only in the sense that they use the song, but in the sense that

they actually used the Plaintiff's own recording – the Plaintiff's voice and vocal rendition –

without crediting him."  Opp. at 3.  Jackson cites to no independent case law to support his

position.  Regardless, his distinction is meaningless as there really is not distinction at all to support Jackson's reasoning as to why *Dastar* does not apply.

Following *Dastar*, courts have found that a Section 43(a) claim does not apply to claims involving a failure to attribute or credit the origin of a creative work, where there has been, as Jackson argues, actual use of the alleged protected material.  *See, e.g.*, *Dastar*, 539 U.S. at 26 (finding defendant's videos entailed copying eight beta cam tapes of the original version of the Crusade television series and then editing the series for a new video set); *Silverman v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 597 (S.D.N.Y. 2007) (the defendant's work, a compilation of poetry, contained 121 of 122 poems collected by the plaintiff in his copyrighted work); *Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F. Supp. 2d 259, 261-62 (S.D.N.Y. 2005) (finding that the wrongdoing at issue relates to the defendants' illegal synchronization of plaintiff's musical works with other works in violation of the plaintiff's copyrights); *Williams v. UMG Recordings, Inc.*, 281 F. Supp. 2d 1177, 1179, 1183 (C.D. Cal. 2003) (finding that plaintiff's Lanham Act claim was based, *inter alia*, on the failure to give him credit for the authoring of his copyrighted narration script).

Moreover, the tangible "goods" offered for sale relevant to Jackson's Lanham Act claim are the basketball DVD entitled MixTape X and related products.  Compl. ¶ 51.  The Song is not the "goods" at issue.  Thus, there is no Lanham Act claim.  *See Smith v. New Line Cinema,* No. 03 Civ. 5274(DC), 2004 WL 2049232, at *4 (S.D.N.Y. Sept. 13, 2004) (dismissing, based on *Dastar,* a Lanham Act claim alleging failure to credit the true author of a screenplay).  Rather, "[t]he right to copy creative works, with or without attribution, is the domain of copyright, not of trademark or unfair competition. The failure to credit the true author of a copyrighted work is not

a false designation of origin, but a violation of copyright." *Freeplay Music, Inc. v. Cox Radio, Inc.,* 409 F. Supp. 2d 259, 263 (S.D.N.Y. 2005) (citing *Dastar*, 539 U.S. at 33).

Accordingly, Jackson's claims for failure to give credit under the Lanham Act in Count IV should be dismissed.

## III.   <u>CONCLUSION</u>

For the reasons set forth above and in the Moving Defendants' opening memorandum, Plaintiffs' Counts for violations of the Lanham Act (Count IV), Waste (Count V), Tortious Interference with Prospective Business Expectancy (Count VII), violations of the Missouri Merchandising (Count VII), Civil Conspiracy (Count VIII), and Tortious Interference with Right of Publicity (Count IX) should all be dismissed with prejudice.  In addition, Plaintiffs did not timely file their copyright registration and are therefore precluded from seeking statutory damages and attorneys' fees under the Copyright Act.

Dated:  May 12, 2011                                  Respectfully submitted,

                                                            **DOWD BENNETT LLP**

                                                            By:  /s/ Robert F. Epperson, Jr.
                                                                 James F. Bennett #46826MO
                                                                 Robert F. Epperson, Jr. #46430MO
                                                            7733 Forsth Blvd., Suite 1410
                                                            St. Louis, MO 63105
                                                            Tel:  (314) 889-7306
                                                            Fax:  (314) 863-2111
                                                            repperson@downbennett.com

                                                            Barry L. Cohen***
                                                            SORINROYERCOOPER LLC
                                                            101 W. Elm Street, Suite 220
                                                            Conshohocken, PA 19428
                                                            Tel: (484) 362-2628
                                                            Fax: (484) 362-2630
                                                            bcohen@sorinroyercooper.com

***Not admitted in E.D.MO.  *Pro Hac Vice* Motion to be filed.

Attorney for Defendants The Basketball Marketing Company, Inc., ESPN, Inc., ESPN Enterprises, Inc. and ESPN Home Media

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of May, 2011, a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Charles S. Kramer
RIEZMAN BERGER, P.C.
7700 Bonhomme Avenue
Seventh Floor, Bonhomme Place
Clayton, MO 63105

Jennifer E. Hoekel
B. Scott Edison
SENNIGER POWERS LLP
100 N. Broadway, 17th Floor
St., Louis, MO 63102

_____/s/ Robert F. Epperson_____