UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DUTCH JACKSON IATG, LLC, et al.,   )
                                    )
        Plaintiffs,                 )
                                    )
    vs.                             )   No. 4:11-CV-227 (CEJ)
                                    )
THE BASKETBALL MARKETING            )
COMPANY, et al.,                    )
                                    )
        Defendants.                 )

**MEMORANDUM AND ORDER**

This matter is before the Court on the joint motion to dismiss filed by defendants ESPN Enterprises Inc., ESPN Home Media, ESPN Inc., and The Basketball Marketing Company for failure to state a claim. The defendants move to dismiss Counts IV through IX of the complaint and to dismiss plaintiffs' request for statutory damages and attorneys fees. Plaintiffs oppose the motion and the issues are fully briefed.

I.   Background

Plaintiffs bring this action seeking damages and injunctive relief for the defendants' unauthorized use of plaintiffs' copyrighted musical work titled "I am the Greatest."[1] Plaintiffs' song was allegedly used by defendants as part of the sound track to a basketball DVD produced and sold by defendants titled "AND1® Mixtape® X." Plaintiffs claim that their song was originally written and performed by plaintiff Michael

---

[1] The claims asserted in the complaint are: (I) copyright infringement; (II) contributory infringement (under the Copyright Act); (III) vicarious infringement (under the Copyright Act); (IV) violations of the Lanham Act - False Advertising and Unfair Competition; (V) waste; (VI) tortious interference with prospective business expectancy; (VII) violations of the Missouri Merchandising Practices Act; (VIII) civil conspiracy; and (IX) tortious interference with the rights of publicity.

"Dutch" Jackson in November 2006.  They further allege that defendants improperly obtained a copy of the song, which had not been published prior to the release of defendants' video in 2008.  Plaintiffs registered the song with the United States Copyright Office on May 10, 2010.

II.     Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint.  The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id.  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974; See also id. at 1969 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement.").  "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

III.    Discussion

   A.   Lanham Act Claim (Count IV)

In Count IV, plaintiffs seek damages under the Lanham Act, 15 U.S.C. § 1125

et seq., for defendants' use of plaintiffs' song in a manner that falsely represents the origin of and ownership of the work.  Defendants argue that plaintiffs have failed to state a Lanham Act claim in light of the holding in <u>Dastar Corp v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 30-37 (2003).  Plaintiffs contend that <u>Dastar</u> is distinguishable and does not bar their Lanham Act claim.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a federal remedy against the use in commerce of "a false designation of origin, or any false description or representation" in connection with "any goods or services."  The plaintiff in <u>Dastar</u> claimed that defendant violated the Lanham Act by selling edited versions of historical videos--originally created by plaintiff, but no longer protected by copyright --without crediting plaintiff as the original source of the videos.  The Supreme Court rejected this claim, explaining, "the  phrase 'origin of goods' in the Lanham Act . . . refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."  <u>Dastar</u>, 539 U.S. at 37. "To hold otherwise," the Court reasoned, "would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." <u>Id.</u> (citing <u>Eldred v. Ashcroft</u>, 537 U.S. 186, 208 (2003)).  Thus, the Court held that incorporating a creative work of another into a product without crediting the creator does not give rise to a claim under the Lanham Act.

Plaintiffs relies on two hypothetical examples described in dicta by the Court in <u>Dastar</u> to support their Lanham Act claim.  In the first example, the Court wrote that a Lanham Act claim "would undoubtedly be sustained if [defendant] had bought some of [plaintiff's] videotapes and merely repackaged them as its own." <u>Id.</u> at 31.  In the second example, the Court noted that, if

-3-

> the producer of a video that substantially copied [plaintiff's video] were, in advertising or promotion, to give purchasers the impression that the video was quite different from that series, then one or more of the respondents might have a cause of action—not for reverse passing off under the "confusion … as to the origin" provision of § 43(a)(1)(A), but for misrepresentation under the "misrepresents the nature, characteristics [or] qualities" provision of § 43(a)(1)(B). For merely saying it is the producer of the video, however, no Lanham Act liability attaches to [defendant].

Id. at 38.

The Court finds that neither of the two examples is implicated by the factual allegations in plaintiffs' complaint.

Plaintiffs' argument under the first example--that defendants used an exact copy of plaintiffs' song on the soundtrack to their video, and thus, merely repackaged plaintiffs' song as their own--is without merit. This is not an instance of defendants repackaging a "good" made by plaintiffs as their own because the "goods" at issue-- defendants' mixtape DVDs--were undisputedly created and manufactured by defendants. Plaintiffs' song, whether an exact copy or not, is not a distinct tangible good in this instance, but rather an "idea, concept, or communication embodied in [defendants'] goods." Id. at 37; see also Weidner v. Carroll, No. 06-CV-782, 2007 WL 2893637 *4 (S.D. Ill. 2007) (declining to recognize a Lanham Act claim where the "product" at issue was "nothing more tangible than the idea or communication that it embodies, particularly since there is nothing tangible about the information exchanged over the internet.").

Nor does the second example apply under the facts alleged in the complaint. The defendants did not mention the origin of plaintiffs' song or reference the origin of song in the advertising or on the packaging of defendants' video. Plaintiffs argue that, by failing to do so, the defendants implicitly represented that the song was

defendants' original work and thereby misrepresented the nature and characteristics, *i.e. the originality*, of plaintiffs' song and the content of defendants' video.  The plaintiffs' novel misrepresentation-by-implication theory is an impermissible work-around of the holding in Dastar.  The Court ruled that "no Lanham Act liability attaches to [defendant]" for merely saying that it was the producer of the video.  Dastar, 539 U.S. at 38.  This statement holds true whether plaintiffs bring their claim under the "confusion … as to the origin" provision of § 43(a)(1)(A) or the "misrepresents the nature, characteristics [or] qualities" provision of § 43(a)(1)(B).  Because in either instance, allowing plaintiff's Lanham Act claim to proceed would impose an affirmative duty on defendants, thereby creating the "species of perpetual patent and copyright" rejected in Dastar.  539 U.S. 23.

The plaintiffs' Lanham Act claim is indistinguishable from the claim that failed in Dastar.  Id.  As such, Count IV of the complaint fails to state a claim and will be dismissed.

### B.     Preemption of State Law Claims (Counts V-IX)

Defendants next argue that plaintiffs' state law claims (Counts V through IX) are preempted by the Copyright Act.  The Copyright Act provides the exclusive source of protection for all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright.  National Car Rental System, Inc. v. Computer Associates Intern.,Inc., 991 F.2d 426, 428 (8th Cir. 1993).  The preemption provision is found in section 301(a) of the Copyright Act, which states in part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright…are governed exclusively by this title.  Thereafter, no person is entitled to any such

> right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

"A state cause of action is preempted if: (1) the work at issue is within the subject matter of copyright as defined in §§ 102 and 103 of the Copyright Act, and (2) the state law created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106." National Car Rental System, Inc., 991 F.2d at 428. Because the allegations in the complaint are within the subject matter of copyright, the issue becomes whether the rights at issue in the state law claims are "equivalent" to the exclusive rights outlined in the Copyright Act.

In determining whether the rights at issue are equivalent, the Court must consider whether "there is an 'extra element' that changes the nature of the state law action so that it is *qualitatively* different from a copyright infringement claim." Huckshold v. HSSL, L.L.C., 344 F.Supp.2d 1203, 1206 (E.D. Mo. 2004) (emphasis in original). "The existence of an extra element precludes preemption only where the element changes the nature, rather than the scope, of the action." Stromback v. New Line Cinema, 384 F.3d 283, 301 (6th Cir. 2004).

### 1. Count V - Waste

Plaintiffs claim that defendants' use of their copyrighted work gives rise to a claim for waste under Missouri common law. A claim for waste under Missouri law compensates an owner of real property for diminution in value caused by a tenant or other person holding a possessory interest. See White v. Marshall, 83 S.W.3d 57 (Mo. Ct. App. 2002). While Missouri law does provide for recovery in tort for damage caused to personal property, Cf. Gateway Foam Insulators, Inc. v. Jokerst Paving &

Contracting, Inc., 279 S.W.3d 179 (Mo. 2009), plaintiff has not cited -- and the Court is unaware of -- any case under Missouri law allowing recovery for diminution of value to intangible property. Even if such a claim were to exist, the Court finds it to be preempted by the Copyright Act as qualitatively equivalent to plaintiffs' infringement claims. See Benchmark Homes, Inc. v. Legacy Home Builders, L.L.C., No. 8:03CV52, 2006 WL 240613 (D. Neb. 2006) ("Actual damages [for copyright infringement] are the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement.") (citing MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHT, § 14.02, at 4-14 (2005)). Count V will be dismissed for failure to state a claim.

2.     Count VI - Tortious Interference with Business Expectancy

To state a claim for tortious interference under Missouri law, plaintiffs must show: (1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages. See Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247, 250 (Mo. banc 2006).

A tortious interference claim is not preempted by the Copyright Act when it is based on allegations that the defendant induced a third party to breach a contract with the plaintiff. See Two Palms Software, Inc. v. Worldwide Freight Management, LLC, 780 F.Supp.2d 916, 922 (E.D. Mo. 2011) (citing Do It Best Corp. v. Passport Software, Inc., 2004 WL 1660814 at *19 (N.D.Ill.2005)). However, a tortious interference claim is preempted when it is based on the creation of infringing copyright material. Id. Further, "[a]wareness or intent … are not extra elements that make a state law claim qualitatively different [from a copyright infringement claim]." Huckshold v. HSSL, L.L.C., 344 F.Supp.2d 1203 (E.D. Mo. 2004) (quoting Briarpatch Ltd., L.P v. Phoenix

Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004).

Plaintiffs' tortious interference claim is premised on the allegation that defendants' prevented them from entering into future anticipated relationships with third parties. Clearly, defendants could not have induced third parties to breach contracts that never existed. As such, plaintiffs' tortious interference claim in Count VI, which is based solely upon defendants' copying and sale of their song, is preempted by the Copyright Act and will be dismissed.

### 3. Count VII - Missouri Merchandising Practices Act (MMPA)

Defendants' argue that plaintiffs' MMPA claim should be dismissed as preempted by the Copyright Act or, alternatively, for lack of standing. The Court will first address the issue of standing, which is jurisdictional in nature. Amburgy v. Express Scripts, Inc., 671 F.Supp.2d 1046 (E.D. Mo. 2009) ("The 'threshold requirement' imposed by Article III is that those who seek to invoke the power of federal courts must allege an actual case or controversy.") (quoting O'Shea v. Littleton, 414 U.S. 488 (1974).

To show Article III standing, a plaintiff has the burden of proving: (1) that he suffered an "injury-in-fact," (2) that a causal relationship exists between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "Injury in fact" requires the invasion of a "legally cognizable right." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585 (8th Cir. 2009) (internal quotation omitted). "In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." Powers v. Ohio, 499 U.S. 400, 410 (1991). However, the Supreme Court has recognized third-party standing where: (1) plaintiff suffered an "injury in

fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute, (2) plaintiff has a close relationship to the third party, and (3) there exists some hindrance to the third party's ability to protect his or her own interests. Id. at 410-11 (citing Singleton v. Wulff, 428 U.S. 106 (1976)).

The MMPA authorizes a civil action by "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful." Mo. Rev. Stat. § 407.025.  To state a claim under the MMPA, "the loss must occur to a person who purchases [or leases] merchandise primarily for personal, family or household purposes." Hunters Friend Resort, Inc. v. Branson Tourism Center, L.L.C., No. 09-3114-CCV-S-ODS, 2009 WL 2450281 (W.D. Mo. 2009).

Here, plaintiffs are not alleging injury as a result of *their* purchase or lease of defendants' merchandise.  As such, they are neither within the class of persons the MMPA was enacted to protect (consumers) nor do they allege an injury that the MMPA was intended to address.  Id.  Plaintiffs have also failed to allege facts sufficient to assert the rights held by the third-party purchasers of defendants' DVD. See Powers, 499 U.S. at 410-11.  Consequently, plaintiffs lack standing to bring a claim under the MMPA and Count VII will be dismissed for lack of subject-matter jurisdiction. See Fed. R. Civ. P. 12(b)(1).

4.     Count VIII - Civil Conspiracy

To state a claim for civil conspiracy, plaintiffs must plead: (1) two or more persons (2) acted with an unlawful objective, (3) after a meeting of the minds, (4) committing at least one act in furtherance of the conspiracy, and thereby (5) caused

damages to plaintiffs.  Oak Bluff Partners, Inc. v. Meyer, 3 S.W.3d 777, 781 (Mo. banc 1999).

Plaintiffs allege that defendants conspired to use plaintiffs' song to their commercial advantage.  (Doc. #1).  As this Court noted in Warren Sign Co., Inc. v. Piros Signs, Inc., 2010 WL 3034637 (E.D. Mo. 2010), "the majority of courts that have considered this issue have held that civil conspiracy claims are preempted under the Copyright Act," except where the claim "involves a conspiracy to commit an underlying tort or wrong other than copyright infringement, such as fraud."  Id. at *4 (quoting Tegg Corp. v. Beckstrom Electric Co., 650 F.Supp.2d 413, 427 (W.D. Pa. 2008)). "Because copyright law already recognizes the concepts of contributory infringement and vicarious copyright infringement concepts, . . . a civil conspiracy claim does not add substantively to the underlying federal copyright claim and should therefore be preempted." Irwin v. ZDF Enterprises GmbH, 2006 WL 374960 at *4 (S.D.N.Y.2006) (internal citations omitted).  Plaintiffs have alleged claims based upon both contributory and vicarious infringement.  Their civil conspiracy claim does not allege any underlying tort or wrong that is qualitatively distinct from their already-stated copyright claims. As such, the Court finds plaintiffs' civil conspiracy claim to be preempted and subject to dismissal under Fed. R. Civ. P. 12(b)(6).

    5.  Count IX - Tortious Interference with Right to Publicity

Under Missouri law, "the elements of a right of publicity action include: (1) [t]hat defendant used plaintiff's name as a symbol of his identity (2) without consent (3) and with the intent to obtain a commercial advantage." Doe v. TCI Cablevision, 110 S.W.3d 363, 369 (Mo.2003).  Plaintiffs claim that defendants' failure to attribute plaintiffs' song to Jackson interfered with plaintiffs' expected right to publicity and

goodwill. In their response to the motion to dismiss, plaintiffs state that they are actually asserting a "species of tortious interference with business expectancy which is premised on the fact that Missouri law recognizes that Jackson has and had a legitimate expectancy" of publicity. (Doc. #25).

As discussed above, plaintiffs' tortious interference with business expectancy claim is preempted because plaintiffs' "business expectancy" is not based on the existence of any third-party contract. Also, as the defendants did not use plaintiffs' names in connection with their DVD, plaintiffs do not state a claim for interference with publicity. TCI Cablevision, 110 S.W.3d at 369. Count IX of the complaint will be dismissed.

### C. Statutory Damages and Attorneys' Fees

The Copyright Act provides that "[n]o award of statutory damages or of attorney's fees . . . shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412(2). Plaintiffs do not dispute that defendants began selling the DVD that contains plaintiffs' song more than three months before the song was registered with the Copyright Office. Instead, they argue that defendants continued to infringe upon their copyright after registration and that these acts constitute separate instances of infringement commenced not more than three months prior to registration.

Plaintiffs' interpretation of § 412(2) --for which they cite no supporting case law -- is incorrect. "Under section 412, infringement "commences" when the first act of infringement in a series of on-going discrete infringements occurs." Ez-Tixz, Inc. v.

Hit-Tix, Inc., 919 F.Supp. 728 (S.D. N.Y. 1996) (collecting cases). "Even when the plaintiff attempts to limit its claim of infringement to events that occurred after registration, § 412 prevents the recovery of statutory damages when the infringement commenced before registration of the copyright and continued after registration." Cassetica Software, Inc. v. Computer Sciences Corp., 2009 WL 1703015 (N.D. Ill. 2009).  As such, plaintiffs are not entitled to statutory damages and attorneys' fees under 17 U.S.C. § 412(2) as a matter of law and dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate.  Embroidery Library, Inc. v. Sublime Stitching, LLC, 2010 WL 330321 (D. Minn. 2010) (dismissal of § 412(2) statutory damages and attorneys' fees request is proper under Fed. R. Civ. P. 12(b)(6)).

*****

For the reasons set forth above,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [Doc. #21] is **granted**.

An order of partial dismissal will be filed separately.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 17th day of January, 2012.